```
___ FILED    ___ LODGED
___ RECEIVED ___ COPY

    APR 16 2004

CLERK U S DISTRICT COURT
  DISTRICT OF ARIZONA
BY_____DEPUTY
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV 02-264-TUC-RCC |
| Plaintiff, | **ORDER** |
| vs. | |
| ONE TRW U.S. RIFLE, MODEL 14 7.62x51 mm caliber, S/N 593006, | |
| Defendant. | |

Pending before the Court are Plaintiff's October 17, 2003 Motion for Summary Judgment and Plaintiff's December 16, 2003 Motion to Strike Claimant's Opposition to Plaintiff's Motion for Summary Judgment. The Court heard oral argument on April 5, 2004. After considering the parties' briefs and arguments, the Court will deny the Motion to Strike and grant Plaintiff's Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mark Travis Brown ("Claimant") purchased Defendant from MK Specialties in February 1999. In March 1991, Claimant attempted to sell Defendant to a federal firearms licensee, West of the Pecos, in Tucson. The manager of West of the Pecos was hesitant to purchase the property and contacted the Bureau of Alcohol, Tobacco and Firearms ("ATF") to inquire about its classification. (SOF ¶6). ATF Special Agent Robert Lowery contacted Claimant and verified that he was in possession of the property. Special Agent Lowery then

1. learned from the ATF's Firearms Technology Branch ("FTB") that, after examination, it was
2. determined that other similar firearms were machineguns within the meaning of 26 U.S.C. §
3. 5845(b). Claimant met with Special Agent Lowery on May 8, 2001 at the ATF Tucson Field
4. Office and Defendant was seized under the authority of 26 U.S.C. § 5872(a). After
5. conducting a search of the National Firearms Registration and Transfer Record ("NFRTR"),
6. Special Agent Lowery determined that the defendant property is not registered to Claimant
7. or to any other person.
8.     On May 23, 2002, Plaintiff filed this forfeiture action claiming that Defendant is a
9. machinegun as defined in 26 U.S.C. § 5845(b), is not registered in the NFRTR as required
10. by 26 U.S.C. § 5841, and is thus possessed in violation of 26 U.S.C. § 5861(d). Claimant
11. filed a claim regarding Defendant on July 8, 2002 and asked that it be returned to him.
12. Plaintiff filed this Motion for Summary Judgment on October 17, 2003 and Claimant
13. requested Oral Argument on January 30, 2004. Also pending is Plaintiff's Motion to Strike
14. Claimant's Opposition on the grounds that the scheduling order was violated.

15. **MOTION TO STRIKE**
16. <u>Plaintiff's Motion</u>
17.     On December 16, 2003, Plaintiff filed its Motion to Strike requesting that the Court
18. strike Claimant's Opposition to Plaintiff's Motion for Summary Judgment as a sanction for
19. his failure to comply with Rules 26 and 56 of the Federal Rules of Civil Procedure and Rules
20. 1.9 and 1.10 of the Rules of Practice of the United States District Court for the District of
21. Arizona ("Local Rules"). Plaintiff argues that Claimant failed to identify Arthur Douville
22. as a person with discoverable information or as a witness. Therefore, Claimant argues,
23. attaching his Declaration in support of the Opposition violates the scheduling order. Plaintiff
24. contends that the failure to disclose this information is not justified and is not harmless.
25. Finally, Plaintiff argues that the Opposition did not comply with the form prescribed by the
26. Local Rules because it is not typed on pleading paper, the title of the court begins above line
27. 6, the left margin is less than 1 ½ inches, and the font size is smaller than 13 point (*See* Rule
28.

1.9). Plaintiff also argues that Claimant far exceeded the page-limit requirement of Rule 1.10(e).

Claimant's Opposition

Claimant responds to the Motion by arguing that he is in compliance with Rule 26(e), which requires him to supplement disclosures "at appropriate intervals." *See* FED.R.CIV.P. 26(e). He asserts that he did not become aware of Arthur Douville until late June, 2003 and was not provided with his photographs until early July. Further, Claimant did not know that his expert would rely on the photographs to form an opinion until late August 2003. The photographs were not actually examined, however, until October 7, 2003, because of an intervening objection by Plaintiff which required a Court ruling. Claimant argues that Plaintiff was informed at the appropriate intervals of discovery and has suffered no harm. Finally, Claimant concedes that he did violate the Local Rules, but argues that because his failure to comply was non-willful, he should not lose his right to file an opposition to the Government's motion for summary judgment.

Legal Standard and Analysis

Failure to comply with the scheduling order allows the judge "upon motion or the judge's own initiative" to "make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." FED.R.CIV.P. 16(f). The Ninth Circuit has stated that "although we review every discovery sanction for an abuse of discretion, we give particularly wide latitude to the district court's decision to issue sanctions under Rule 37(c)(1)." *Yeti By Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Since the district court has broad authority to sanction a party for violating Rule 26(e)(1), it is within the Court's discretion to determine whether discovery was supplemented at an "appropriate interval." *Id.*

District courts have "broad discretion in interpreting and applying their local rules." *Delange v. Dutra Const. Co.*, 183 F.3d 916, 919 (9th Cir. 1999) (quoting *Miranda v. S.P. Tansp.*, 710 F.2d 516, 521 (9th Cir. 1983)). However, the district court cannot enforce Local

Rules that contravene the Federal Rules of Civil Procedure. *Atchison, Topeka and Santa Fe Railway Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). "[A] local rule imposing a requirement of form shall not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." FED.R.CIV.P. 83(a)(2).

Having reviewed the parties' briefs, the Court finds that the failure to disclose Arthur Douville as a person with discoverable information or as a witness is harmless to Plaintiff. Further, Claimant's violations of Local Rules 1.9 and 1.10 are non-willful. For these reasons, the Court will not strike Claimant's Opposition. Plaintiff's Motion to Strike is therefore denied.

## SUMMARY JUDGMENT

<u>Plaintiff's Motion</u>

Plaintiff argues that the Court should grant summary judgment because there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c). Plaintiff contends that its Complaint, affidavit, Statement of Facts, and attached exhibits show that: 1) the defendant property is a machinegun within the meaning of the National Firearms Act ("NFA"); 2) the Claimant possessed the defendant property; and 3) the defendant property was not registered to Claimant in the NFRTR. Plaintiff further argues that the government has established that the property is subject to forfeiture and has met its initial burden to demonstrate probable cause to believe that the property was used in violation of the law which in this case is the Claimant's possession of the property without proper registration. In applying the totality of the circumstances test, Plaintiff argues that the government had probable cause in this case and this "unrebutted showing of probable cause is sufficient by itself to warrant a judgment of forfeiture." *U.S. v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1362 (9th Cir. 1986) (citing *U.S. v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983)). Plaintiff further asserts that in establishing whether or not Defendant is a machinegun, the applicable standard of review is the arbitrary and capricious standard and the ATF's determination that the property is a machinegun within the meaning of the NFA

should be sustained unless it was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. The NFA describes a machinegun as:

> Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

In this case, Plaintiff asserts the property satisfies each of these criteria because it is designed to shoot automatically and additionally, because it can be readily restored to shoot.

In support, Plaintiff offers the FTB report, which states that it has the same design features of a machinegun as the select fire M-14 receivers from which it was assembled. Further, this property was properly classified as a machinegun under the NFA. Plaintiff asserts the M-14 has been classified by the ATF as a machinegun since 1958 and Defendant is an M-14 receiver that was remanufactured from receivers that were previously cut in half.

Plaintiff further contends that the readily restorable test is satisfied where a firearm can be made capable of renewed automatic operation even if the restoration required the application of some degree of skill and the use of some tools and parts. *See e.g., U.S. v. Smith*, 477 F.2d 399, 400 (8th Cir. 1973) (readily restorable even though to do would take about an eight-hour working day in a properly equipped machine shop); *U.S. v. One Harrington and Richardson Rifle, Model M-14, 7.62 Caliber, Serial No. 85279*, 278 F.Supp.2d 888 (W.D.Mich. 2003) (weapon is readily restorable if it can be made capable of automatic operation through some form of restoration, including restoration requiring a degree of skill and the use of tools and parts" citing *Smith*). In this case, Plaintiff argues that Defendant can be readily restored to shoot by cutting of the sear release, drilling out the selector shaft, and installing new parts (modifications were made in forty-five minutes using easily available hand tools). Plaintiff contends that while Claimant's expert disagrees in

some minor respects with the description of the restoration procedure,[1] these differences do not rise to the level of a disputed issue of material fact. Even with the additional step believed necessary by Claimant's expert, the process would involve less than "an 8-hour working day in a properly equipped machine shop." *Smith* at 400.

Claimant's Opposition

Claimant responds that Plaintiff has not met its initial burden of showing that the defendant property is a machinegun within the meaning of 26 U.S.C. § 5845(b) because that assertion is based solely upon a report by Richard Vasquez which is not a pleading, deposition, answer to interrogatory, admission on file, or an affidavit and thus cannot be considered by the Court for this purpose. Claimant argues that while Plaintiff is correct that the government need only show probable cause to believe that the property was used in violation of the law for forfeiture, the statute as applied is unconstitutional and violates the equal protection component of the Fifth Amendment. By treating forfeitures of firearms under 26 U.S.C. § 5872(a) differently than forfeitures of other property, it is not rationally related to a legitimate state interest. Thus, Claimant concludes, these forfeitures should not be exempt from 18 U.S.C. § 983(c)(1) and the government must meet its initial burden of persuasion by a preponderance of the evidence, which it has not done.

Claimant argues that the standard of review in deeming whether the property is a machinegun is not the arbitrary and capricious standard proposed by the government; rather, it is for the Court to apply the ordinary rules of statutory construction and if left with an ambiguous statute, to apply the rule of lenity and resolve the ambiguity in favor of Claimant. *U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992). As to the definition of a machinegun, Claimant asserts that according to the statute it is the weapon and not the receiver which must be designed to shoot or can be readily restored to shoot automatically.

---

[1] Michael Kelly, Sr. testified that he believed it would be necessary to begin the restoration procedure by adding metal to the receiver by a welding process (a step not used by Mr. Vasquez, Plaintiff's expert).

1  Defendant is not designed to shoot because it is not assembled from M-14 receiver halves
2  and does not have the features which allow it to shoot automatically. However, Claimant
3  asserts that MKS M-14A receivers were manufactured and not assembled from M-14
4  receivers that had been torch cut into 2 sections (rear and front) which removed some of the
5  metal from the center of the M-14 machinegun receivers and thus does not have the same
6  design features of a machinegun as the select fire M-14 receivers from which it was
7  assembled. Further, the fact that the M-14 receiver is a machinegun receiver does not mean
8  that the MKS M-14A receiver must therefore also be a machinegun receiver. Claimant also
9  argues that when it engages in statutory construction, the Court must interpret the words of
10 a statute as taking their ordinary, contemporary, common meaning. *Perrin v. U.S.*, 444 U.S.
11 37, 42 (1979). Since certain words of the statute are not defined by the statute, their common
12 meaning must be applied. Applying this standard, to determine if the receiver is "designed"
13 to shoot automatically, reference must be made to the "selection and arrangement" of the
14 rifle's "functional elements." Here, the designer of the MKS M-14A selected and arranged
15 the functional elements of it so that would not shoot automatically.
16         Claimant asserts that Defendant cannot be readily restored to shoot automatically
17 because "restorable" means that an object was previously in a particular condition and may
18 be returned to that previous condition. In this case, the receiver was created from scrap metal
19 into a new and previously nonexisting condition. Further, Claimant argues that the
20 modifications which would have to be made to convert the defendant property into the M-14
21 configuration would require GTAW welding.[2] Even if the process to convert defendant
22 property is considered a restoration, it could not be done readily[3] because the process would

---

[2] This type of welding is not a simple process and requires special training (attending a vocational technical school). The GTAW welding set-up includes the machine and required accessories, argon gas cylinder, regulator, torch with leads, and foot pedal control, which cost a minimum of $2,000.

[3] Defined as without hesitation; without delay; quickly; without difficulty. *U.S. v. Seven*

take some five hours of labor by a highly trained welder and machinist using expensive equipment. Moreover, even the process outlined by Plaintiff's expert would take some forty-five minutes and involved making alterations to the structure of the receiver by a highly experience gunsmith. Claimant argues that the Court should use the standard of a person of average intelligence with little or no special training or equipment to determine who must readily restore the property. *U.S. v. Whalen*, 337 F.Supp. 1012 (S.D.N.Y. 1972).

Legal Standard

Summary judgment is proper where no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden rests on the moving party to point out the absence of any genuine issue of material fact, but the moving party need not support its motion with affidavits or other supporting materials. FED.R.CIV.P. 56(a); *Celotex*, 477 U.S. at 323. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative (and admissible) evidence that an issue of fact remains to be tried. *Id.* at 323-24. The non-moving party may not rest on mere denials of the movant's pleadings, but must respond asserting specific facts showing a genuine issue exists precluding a grant of summary judgment. FED.R.CIV.P. 56(e); *Celotex*, 477 U.S. at 324. The Court must accept the non-movant's evidence as true and view all inferences in the light most favorable to the non-movant. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

The standard of probable cause to support a forfeiture action is similar to that required to obtain a search warrant. *U.S. v. Real Property 874 Gartel Drive, Walnut Ca.*, 79 F.3d 918, 922 (9th Cir. 1996). The government need only prove that it had reasonable grounds to believe that the property was involved in the alleged offense and that belief may be supported by hearsay evidence. *Id.* "[T]he government need only establish probable cause that the defendant property was involved in the alleged underlying offense, following which the

---

*Miscellaneous Firearms*, 503 F.Supp. 565, 573 (1980).

- 8 -

1  burden shifts to the claimant to establish by a preponderance of the evidence that the
2  defendant property is not subject to forfeiture." *Id.* at 923.
3  <u>Analysis</u>
4        In this case, the Court finds that Plaintiff has established probable cause for
5  forfeiture. The manager from West of the Pecos contacted the ATF with his suspicions about
6  Defendant and Special Agent Lowery established that Claimant was in possession property
7  which may have been a machinegun. Further, a search of the records show that Defendant
8  is not registered to Claimant. Since probable cause has been established, the burden now
9  shifts to Claimant to show that his property is not subject to forfeiture. There is no dispute
10  that the property is not registered, so the remaining point is whether or not it is a machinegun
11  under the NFA.
12        The Court applies the arbitrary and capricious standard to the NFA's definition of a
13  machinegun. Considerable weight should be given to an executive department's construction
14  of a statutory scheme it is entrusted to administer. *U.S. v. Mead Corp.*, 533 U.S. 218, 227-28
15  (2001) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, et al.*, 467 U.S.
16  837, 844 (1984)). "The fair measure of deference to an agency administering its own statute
17  has been understood to vary with circumstances, and courts have looked to the degree of the
18  agency's care, its consistency, formality, and relative expertness, and to the persuasiveness
19  of the agency's position." *Id.* Two recent cases that are directly on point have also used the
20  arbitrary and capricious standard when looking at the NFA's definition of a machinegun. *See
21  e.g., U.S. v. One Harrington and Richardson Rifle, Model M-14, 7.62 Caliber Serial Number
22  85279*, 278 F.Supp.2d 888 (W.D.Mich. 2003); *U.S. v. One TRW, Model M14, 7.62 Caliber
23  Rifle Serial Number 1488973 from William K. Alverson*, 294 F.Supp.2d 896 (E.D.Ky. 2003).
24        The Court finds that Defendant is a machinegun as defined in the NFA and that the
25  ATF did not abuse its discretion in determining it to be the same. Defendant is designed to
26  shoot automatically and also can be readily restored to do so. Claimant was in possession
27
28

of Defendant without proper registration in violation of the law.  For all these reasons, the Court finds that summary judgment in favor of Plaintiff is proper.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Claimant's Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 42) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Docket No. 35) is **GRANTED.**  Defendant Property is ordered **FORFEITED.**

**IT IS ALSO ORDERED** that the Clerk of the Court enter judgment accordingly and **CLOSE THE CASE.**


DATED this 14th day of April, 2004.

_____
RANER C. COLLINS
United States District Judge